N. L. BYRD et al., Appellees,

*v.*

RHEA COUNTY, TENNESSEE, et al., Appellants.

(*Knoxville,* September Term, (May Session), 1959.)

Opinion filed September 9, 1960.

C. P. SWAFFORD, Dayton, for Rhea County.

ALVIN Y. BELL, Dayton, for appellees.

Mr. Justice Swepston delivered the opinion of the Court.

This suit was filed by N. L. Byrd and ten other residents of the Roddy, Pine Grove and Mars Hill voting places or precincts in Rhea County for the use and benefit of themselves and all other voters, freeholders, citizens and residents and taxpayers of said area against the County officials in their official capacity for the purpose of having declared null and void and enjoining any action thereunder a certain resolution adopted January 13, 1958, by the county court by which said three precincts or voting places were consolidated into one and designated as the St. Clair Precinct. The bill was upheld by the Chancellor against the demurrer of the defendants and hence the appeal is directly to this Court.

The bill admits the authority of the county courts of Tennessee to designate convenient places for holding elections in each civil district in the county as provided by T.C.A. sec. 2-701. It is alleged, however, that such authority is contingent upon the county court complying with the provisions of T.C.A. sec. 2-704, which provides as follows:

"*Registration and voting divisions—Establishing and changing—Procedure.*—Whenever two (2) or more civil districts have been consolidated into one (1) civil district or the parts of one (1) or more civil districts added to another civil district, or where a civil district lies partly within and partly without an incorporated town or city, and such part thereof as is not divided into wards, they may be divided and designated into as many 'registration and voting divisions' of the civil

districts by the county court or the commissioners of elections, as may be necessary for the convenience of the voters of such civil districts, for the registration and voting of such voters as reside in said registration and voting divisions, and two (2) registrars shall be appointed for each 'registration and voting division,' who shall be furnished books, stationery, and who shall register the voters residing in said registration and voting divisions, and do all things provided by law to be done as other registrars. When the registration and voting divisions have been defined, none shall be altered, except upon a petition signed by fifty (50) freeholders of the given division and not until after thirty (30) days' notice published once a week for four (4) weeks in some daily or weekly paper having a general circulation in the county, and also posted at the courthouse door for thirty (30) days, setting forth the proposed changes.''

It is alleged specifically that the said quarterly county court of Rhea County wholly failed to comply with the conditions set out in the above statute.

After stating the fact of great inconvenience to the voters to be caused by this proposed change of voting place, it is alleged that by Ch. 49 of the Private Acts of 1953, the then existing four civil districts of Rhea County were consolidated into two civil districts and that of these the first and second civil districts in which are located these three voting places above named were consolidated into what is known as the ''First Civil District''. Therein these three voting places were preserved thereafter.

Defendants demurred on the following grounds:

(1) That T.C.A. sec. 2-701 is not subject to sec. 2-704; (2) that the resolution was legal under T.C.A. sec. 2-701; (3) That T.C.A. sec. 2-704 is an amendment to the registration law of 1905 and was applicable to counties of more than 70,000 population and cities of more than 2,-500 population, and, therefore, has no application to Rhea County; (4) that said sec. 2-704 has been impliedly repealed by the Permanent Registration Law, T.C.A. secs. 2-301 to 2-326 inclusive; (5) T.C.A. sec. 2-704 is not applicable because of Ch. 312, Private Acts of 1955, which abolished the two civil districts set up by the Act of 1953, supra, and reestablished the four districts as they existed prior to 1953.

By reason of this last ground of the demurrer the original bill was allowed to be amended so as to attack the constitutionality of said Act of 1955, supra, and to rely upon said Act of 1953, supra.

The material provisions of said Act of 1955, supra, are as follows:

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, That the present civil districts of Rhea County numbering from One to Two be, and the same are hereby abolished.

"Section 2. Be it further enacted, That in lieu of the present two districts heretofore existing in Rhea County there are hereby created Four Civil Districts for said county as follows: * * *

"Section 3. Be it further enacted, That in the General County Election in 1960, the Justices of the Peace for the districts above set out shall be elected by the qualified voters of said district. * * *

"Section 6. Be it further enacted, That this Act [shall] take effect from and after its passage, the public welfare requiring it, but this Act shall not have the effect of removing the present Justices of the Peace from their offices during the term for which they were elected but they shall hold their offices until the expiration of their terms, and the Quarterly County Court as now constituted shall remain the same until the Justices of the Peace elected under this Act take their office in 1960."

The attack on the said Private Act of 1955 in the amendment to the bill, which is resisted by demurrer, is on three grounds: (1) it violates Art. XI, Sec. 9, as amended by constitutional amendment No. 6 in 1953 in that by the attempted repeal of said Private Act of 1953 it abolishes the office of justices of the peace for those districts created by said 1953 Act and as a matter of law has the effect of removing said officers from office; (2) it violates Art. VI, Sec. 15 of the Constitution; and (3) it violates Art. XI, Sec. 17 of the Constitution in that the attempt to continue the justices in office until 1960, when their districts had been abolished, has the effect of depriving the people of the right to elect the justices.

The Chancellor was of opinion that the population provisions of said Act of 1890 as amended, was repealed by the Permanent Registration Law of this State, supra. That, therefore, T.C.A. sec. 2-704 applies to Rhea County as well as all other counties in the State. That it was, therefore, necessary to rule upon the constitutionality of the Act of 1955, which he did. He held the Act in violation of Art. XI, Sec. 9, supra, quoting from *Grainger County v. State,* 111 Tenn. 234, 80 S.W. 750, as follows:

"The inevitable legal consequence of abolishing the whole districts was the destruction of all the offices of Justice of the Peace, constable, and tax assessor in them. These offices were absolutely dependent upon the districts for their existence, and when the districts were abolished, they were, by operation of the law, destroyed."

He was of opinion also that it violated Art. XI, Sec. 17 of the Constitution.

As a result he enjoined any alteration, change or redesignation of said voting places and any change of said registration books and records pertaining to said precincts.

The action of the Chancellor is challenged by five assignments of error, the gist of which is that T.C.A. sec. 2-704 applied to Rhea County, that it was unnecessary to comply with the provisions thereof and that it was error for the court to consider the constitutionality of said Private Act of 1955.

As we view the case, there are two aspects to be considered: (1) The question of the power of the county court to change the voting place and (2) the power of the county court to take any action in regard to the registration of voters in view of the enactment of the Statewide Registration Act, supra.

Ch. 25 of the Acts of 1890 was a registration act only and contained no provision relating to voting places or precincts; it was applicable only to counties having a population of 70,000 or more and cities having 2,500 or more by the Federal Census of 1880, or which counties

and cities might after the enactment of said statute have such minimum populations.

Ch. 254, Acts of 1905, which was the precursor of T.C.A. sec. 2-704 mistakenly used the figure of 25,000 for cities; it provided under certain conditions for "registration and voting divisions" of civil districts; this is the first appearance of voting divisions or precincts in connection with said original act.

Ch. 436 of the Acts of 1907 provided for the appointment by the State Board of Electors a board of "Commissioners of Election" in each county and that the latter should perform the duties of the "Commissioner of Registration".

Williams' Code of 1932 reenacted the law as it then stood *except the population provision,* and with the addition of the words "county court or" just before the words "Commissioners of Election", and the same is repeated in the present code, T.C.A. 2-704.

The original law with its amendments was not a special or local act but was a general act, because it applied to all who came within it at the time *and those thereafter bringing themselves under it*; it was not passed for the benefit of any individuals but applied to any counties and cities which came under it at the time of its passage or by a later census. *Henley v. State,* 98 Tenn. 665, 698, 41 S.W. 352, 1104, 39 L.R.A. 126; *Hatcher and Lea v. State,* 80 Tenn. 368, 370 (the four-mile law).

■ It was the law of the land because it was a general act (See cases cited in 17 Tenn.Dig. 67, p. 582). Being a general law such part of it as was omitted from the 1932

Code was repealed under Sec. 58 thereof. (Many cases cited thereunder)

Williams Code of 1932 inserted the words "county court or" just before the words "Commissioners of Election" and the same is repeated in the present Code, T.C.A. sec. 2-704.

■ The result of the foregoing is that, in our opinion, T.C.A. sec. 2-704 has been applicable to every county in the State since the enactment of the 1932 Code.

■ We respectfully disagree with the Chancellor, however, in his view that the General Registration Act effected a repeal by implication *of all* T.C.A. sec. 2-704. We are of opinion that the Registration Act repealed the same in regard to the registration provision insofar as the same is inconsistent with the general State-wide law pertaining to registration. We are of opinion that the quarterly county court still has the power to establish places of holding elections in each civil district as provided by T.C.A. sec. 2-701, but where the conditions set out in sec. 2-704 exist, the county court must comply with those conditions.

■ ■ It is evident, therefore, that the Chancellor was correct in determining the question of the constitutionality of said Private Act of 1955. We think that he correctly held said Act unconstitutional on both grounds stated and, therefore, the said Act of 1953 was left at all times in effect, thus necessitating a compliance with T.C.A. sec. 2-704. Hence the Chancellor properly held that the resolution of the county court passed January 13, 1958, was void in regard to the attempt to fix as a voting place St. Clair Precinct in place of the prior three places.

■ It was also void for the reason that no one except the County Election Commissioners and Registrars appointed by them have any authority over the books, records and recording of registrations. See especially T.C.A. secs. 2-306, 2-307.

With the above modification, the decree of the Chancellor is affirmed.